# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**MANUEL T. CHAVEZ, Sr.,**

    Plaintiff,

v.                                                                                                                                               **No. 18-cv-0483 SMV**

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security Administration,**

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 17], filed on October 5, 2018. Defendant responded on January 7, 2019. [Doc. 22]. Plaintiff replied on February 4, 2019. [Doc. 25]. The parties have consented to my entering final judgment in this case. [Doc. 9]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the Administrative Law Judge ("ALJ") did not apply the correct legal standards in evaluating Dr. Gucker's opinion. Accordingly, the Motion will be granted, and the case will be remanded for further proceedings. *See* 42 U.S.C. § 405(g) (sentence four).

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981; 416.1481 (2019). This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation marks omitted).

## Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) he is not engaged in "substantial gainful activity"; *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) either meet or equal one of the "Listings"[2] of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i)–(iv), 416.920(a)(4)(i)–(iv); *Grogan*, 399 F.3d at 1261. If he cannot show that his impairment meets or equals a Listing, but he proves that he is unable to perform his "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## Procedural Background

This is Plaintiff's second appeal to this Court. He originally applied for a period of disability, disability insurance benefits, and supplemental security income on November 14, 2011. Tr. 41. He alleged a disability-onset date of September 1, 2009. *Id.* Plaintiff's claims were denied initially and on reconsideration.

ALJ Barry O'Melinn held the first administrative hearing on January 7, 2014, in Albuquerque, New Mexico. Tr. 41, 58–88. He then issued the first unfavorable decision on

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

3

February 14, 2014. Tr. 53. The Appeals Council denied review, Tr. 15–19, and in federal court, on recommendation by the magistrate judge, the ALJ's decision was reversed and the case was remanded for further proceedings, *Chavez v. Colvin*, No. 15-cv-0734 JAP/KK, [Doc. 43] (D.N.M. Dec. 13, 2016) (unpublished).

On remand, the Appeals Council instructed the ALJ to consolidate Plaintiff's claims with those subsequently filed on October 30, 2015. Tr. 686. ALJ Ben Ballengee held the second administrative hearing on September 13, 2017, in Albuquerque, New Mexico. Tr. 574, 597–640. Plaintiff appeared in person with his attorney. *Id.* The ALJ heard testimony from Plaintiff and an impartial vocational expert ("VE"), Karen Provine. Tr. 597–640.

The ALJ issued the second unfavorable decision on January 25, 2018. Tr. 574–89. He found that Plaintiff met the insured-status requirement through March 31, 2014. Tr. 576. Then, at step one he found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. *Id.* At step two, the ALJ found that Plaintiff suffered from the following severe impairments: diabetes mellitus, diabetic peripheral neuropathy, obesity, and depression with psychotic features. Tr. 577. The ALJ also found that Plaintiff's hypertension, hyperlipidemia, gastroesophageal reflux disease, and history of alcohol and drug abuse did not qualify as "severe." Tr. 578. He further found that any head injury, post-traumatic stress disorder, spine impairment, or elbow impairment failed to qualify as "medically determinable impairments." *Id.*

At step three the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 579–80. Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 580–87. The ALJ found that Plaintiff had:

4

> the [RFC] to perform light work as defined at 20 [C.F.R. §§ 404.1567(b), 416.967(b), and Social Security Ruling] 83-10, except that he can occasionally climb ramps and stairs. He can never climb ladders, ropes, or scaffolds. He can occasionally stoop, kneel, crouch, and crawl. He can occasionally be exposed to unprotected heights and moving mechanical parts. Mentally, he is limited to performing simple, routine tasks. In the use of judgment, he is limited to simple work-related decisions. He can frequently interact appropriately with supervisors and coworkers. He can frequently engage in contact with the public. He can adapt to occasional changes in a routine work setting.

Tr. 580–81.

At step four the ALJ found that Plaintiff was unable to perform past relevant work as a dry-wall applicator, carpenter, or construction worker I. Tr. 587. Accordingly, the ALJ went on to consider Plaintiff's RFC, age, education, work experience, and the testimony of the VE at step five. Tr. 588–89. He found that Plaintiff could perform work that exists in significant numbers in the national economy and, therefore, was not disabled. *Id.* Because this case had been remanded by the federal court once before, Plaintiff was not required file written exceptions with the Appeals Council. *See* 20 C.F.R. § 404.984. Instead, Plaintiff timely appealed directly to this Court on May 24, 2018. [Doc. 1].

## **Analysis**

Remand is warranted because the ALJ erred in failing to explain why he rejected Dr. Gucker's assessments of certain moderate limitations. Because proper evaluation of Dr. Gucker's opinion may render moot Plaintiff's other alleged errors, the Court declines to pass on them at this time.

5

## I. The ALJ failed to apply the correct legal standard in evaluating the non-examining opinion of Dr. Gucker.

Although ALJs need not discuss every piece of evidence, they are required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)[3]). That is, when assessing a plaintiff's RFC, an ALJ must explain what weight she assigns to each opinion and why. *Id.* "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity . . . because the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and quotation marks omitted)); *see Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) (same). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). ALJs are required to provide "appropriate *explanations* for accepting or rejecting such opinions." Social Security Ruling ("SSR") 96-5p, 1996 WL 374183, at *5 (emphasis added); *see Keyes-Zachary,* 695 F.3d at 1161 (same) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996

---

[3] These regulations apply to this case because Plaintiff's claims were filed prior to March 27, 2017. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017). The Court is not persuaded by Defendant's argument otherwise. *See* [Doc. 22] at 8.

SSR LEXIS 5, at *20, 1996 WL 374184, at *7.  The ALJ's reasons must be specific and legitimate. *Chapo*, 682 F.3d at 1291.

Dr. Gucker offered a non-examining opinion that Plaintiff had moderate limitations in the following areas:

- The ability to remember locations and work-like procedures;
- The ability to understand and remember very short and simple instructions;
- The ability to carry out very short and simple instructions;
- The ability to maintain attention and concentration for extended periods;
- The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
- The ability to sustain an ordinary routine without special supervision;
- The ability to work in coordination with or in proximity to others without being distracted by them;
- The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
- The ability to interact appropriately with the general public;
- The ability to ask simple questions or request assistance;
- The ability to accept instructions and respond appropriately to criticism from supervisors;
- The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- The ability to respond appropriately to changes in the work setting;
- The ability to set realistic goals or make plans independently of others.

Tr. 103–04.  He further opined that Plaintiff had marked limitations in the following areas:

- The ability to understand and remember detailed instructions.

- The ability to carry out detailed instructions.

Tr. 103. The ALJ accorded Dr. Gucker's opinion "significant weight." Tr. 586. Plaintiff argues that the ALJ ignored certain of the moderate limitations assessed by Dr. Gucker, because the RFC assessment fails to account for all of Dr. Gucker's assessed limitations. Therefore, as Plaintiff sees it, the ALJ failed to apply the correct legal standard in weighing Dr. Gucker's opinion. [Doc. 25] at 6. The Court agrees.

### A. The ALJ must consider the doctor's entire opinion.

Defendant's arguments in support of the ALJ's decision are without merit. [Doc. 22] at 14–17. Defendant argues that Dr. Gucker's "formal opinion" (referred to as "Section III") is the only part of his opinion that matters. *Id.* at 15. The implication is that the ALJ was permitted to ignore the other parts of the opinion (e.g., Section I). Review of the relevant authorities—the POMS, regulations, and case law—indicates that Defendant is incorrect.

#### i. The distinction between Section I and Section III is aimed at the doctor who completes the MRFCA form; it is not material to how the ALJ weighs the nonexamining opinion.

An explanation of the relevant administrative process is necessary here. At the initial and reconsideration stages,[4] the ultimate determination of disability can be made by a "medical consultant," who is a doctor, expert in evaluating claims for disability benefits. Program Operations Manual System ("POMS") § DI 24501.001(B)(2). The doctor weighs the evidence in the file in order to make findings as to the claimant's RFC (and, ultimately, as to whether she is

---

[4] When a claimant applies for disability benefits, the Commissioner's first pass at the application occurs at the "initial" stage. If the application is denied, the claimant may request "reconsideration." If the claim is again denied, she may request a hearing before an ALJ. If the claim is denied by the ALJ, she may request that the Appeals Council review the ALJ's decision. If the Appeals Council denies review, she may file a lawsuit in federal court.

8

disabled and entitled to benefits). POMS §§ DI 24501.001(B)(2); 24501.005(B)(1), (C). In other words, at the initial and reconsideration stages, the doctor himself is the adjudicator. *Id.*

To record his RFC assessment, the doctor utilizes form SSA-4734-F4-SUP, the Mental Residual Functional Capacity Assessment ("MRFCA") form. POMS DI §§ 24510.005(B)(2); 24510.061(A). The POMS explains that in order "[t]o assure a comprehensive assessment of mental RFC, the [MRFCA form] requires the [doctor] to first record preliminary conclusions about the effect of the impairment(s) on each of four general areas of mental function [in Section I,] then to prepare a narrative statement of mental RFC [in Section III]." POMS § DI 24510.061(A) (emphases omitted). For example, a claimant is "'Moderately Limited' when the evidence supports the conclusion that the individual's capacity to perform the activity is impaired." POMS § DI 24510.063(B) (emphases omitted). When the doctor finds a claimant moderately limited in a certain area, "[t]he degree and extent of the capacity or limitation must be described in a narrative format in Section III." POMS § DI 24510.063(B)(2) (emphases omitted). "Section III is for recording the formal narrative mental RFC assessment and provides for the [doctor] to prepare a narrative statement for each of the subsections (A through D) in [S]ection I." POMS § DI 24510.065(A), *see* (B). In other words, the doctor must incorporate all of his Section I findings into his Section III narrative RFC assessment.

At the stages that the doctor makes these RFC findings, i.e., at the initial and reconsideration stages, his RFC findings are *not* evidence. POMS § DI 24515.007(3)(a). The MRFCA form, which contains his RFC findings, is not evidence; rather, it is a decision. The POMS expressly clarifies that when the doctor is acting as an adjudicator (i.e., at the initial and

9

reconsideration stages), his "findings are not opinion evidence, but are formal determinations based on weighing of all the evidence." *Id.*

Later in the administrative process, however, if the case comes before an ALJ, the nature of the MRFCA form changes. At the ALJ stage, the doctor's MRFCA form is no longer the adjudication of the case; rather it becomes *evidence* that the ALJ must consider in making her own new, independent findings. The ALJ considers the doctor's MRFCA form along with all of the other evidence in the file. This MRFCA form has been completed by a doctor, acting as an adjudicator, at an earlier administrative stage. Because that doctor never examined the claimant, ALJs (and courts) refer to him as the "nonexamining physician" and refer to his report as the "nonexamining opinion." In other words, when the case percolates up to an ALJ, the findings on the MRFCA form change from an adjudication of the claim to a "nonexamining opinion" about the claim.

At the ALJ stage (and thereafter) the *entire* MRFCA form—all of the findings on the MRFCA form—is considered the doctor's "opinion." POMS DI § 24515.007(1)(b) ("All evidence from nonexamining sources is opinion evidence."); *see* POMS §§ DI 24515.002(B)(2) ("Medical opinions are statements from physicians and psychologists . . . that reflect judgments about the nature and severity of a claimant's impairment(s), including any of the following: a. Symptoms, b. Diagnosis and prognosis, c. What the claimant can still do despite impairment(s), and d. Physical or mental restriction."); 24510.010(A)(2) ("The medical source statement must always be carefully considered and addressed."). The distinction between Section I and Section III, which was meaningful for the physician adjudicator, has little to no bearing on how the ALJ must weigh the MRFCA report. POMS § DI 24515.007(3)(b) ("At the . . . [ALJ]. . . hearing . . . level . . . , the

ALJ . . . will consider findings of fact made by DDS medical and psychological consultants . . . regarding the nature and severity of an individual's impairment(s) as expert opinion evidence of nonexamining sources."). Appreciating the administrative context in which the MRFCA form is generated is helpful because it clarifies that the POMS' distinction between Section I and Section III is aimed at the doctors who complete the forms, not at the ALJs.

Accordingly, the Court is not persuaded by Defendant's citation to POMS DI § 25020.010(B)(2) as support for her (incorrect) assertion that the ALJ should (or may) rely solely on Section III and ignore Section I. *See* [Doc. 22] at 15. That section of the POMS reads "It is the narrative written by the psychiatrist or psychologist in Section III ('Functional Capacity Assessment') . . . that adjudicators are to use as the assessment of RFC." Defendant appears to assume that "adjudicator" in that section refers to ALJs; it does not. It refers to the physician-adjudicators who make disability determinations at the initial and reconsideration stages. Such conclusion becomes evident when the statement is read in its administrative context.

Moreover, Dr. Gucker's MRFCA was not recorded on the traditional stand-alone form with Sections I, II, and III. (It is these sections to which Defendant's argument refers. *See* [Doc. 22] at 15.) Rather, his MRFCA was recorded using the newer Electronic Claims Tool ("eCAT"). Tr. 102–05. The MRFCA, as recorded in eCAT, contains neither a "Section I," nor a "Section III." *Id.* There simply is nothing on the doctor's reports reflecting any "Section." *Id.* Having reviewed hundreds of these forms in the past, the Court can make an educated guess as to which portions of the MRFCA might constitute the Section I and Section III findings in the traditional form. However, the Court cannot agree with Defendant that in this case, the ALJ was permitted to ignore the "Section I" findings when there is no "Section I" in Dr. Gucker's report.

### ii. The relevant authorities require the ALJ to consider a medical opinion in its entirety.

More to the point, there simply is no authority permitting an ALJ to ignore any portion of a doctor's opinion, regardless of whether it is labeled as "Section I" or not. *Silva v. Colvin*, 203 F. Supp. 3d 1153 (D.N.M. 2016) (thoroughly explaining the multiple sources of authority requiring ALJs to evaluate source opinions in their entirety and rejecting the argument that an ALJ may ignore any portion of an opinion). "The POMS' distinction between Section I and Section III is aimed at the doctor who completes the MRFCA form; *it is not material to how the ALJ weighs the nonexamining opinion.*" *Id.* at 1159 (emphasis added). To the contrary, the POMS explicitly and repeatedly requires the ALJ to consider nonexamining opinions in their entirety. *Id.* at 1160–61 (surveying and discussing the authorities and citing *e.g.*, POMS § DI 24515.007(1)(b) ("All evidence from nonexamining sources is opinion evidence.")).

Like the POMS, the regulations also belie Defendant's position. *Id.* at 1161–62 (citing 20 C.F.R. §§ 416.927(e)(2)(i), 416.912(b)(1)(viii)). The regulations require the ALJ to consider the doctor's opinion in its entirety. There is no exception for the Section I findings.

In line with the POMS and the regulations, the case law also requires the ALJ to consider a doctor's opinion in its entirety. For example, in *Haga v. Astrue*, the Tenth Circuit held that an ALJ erred in failing to explain why he adopted some of a consultative examiner's ("CE") restrictions but rejected others. 482 F.3d 1205, 1208 (10th Cir. 2007). "[T]he ALJ did not state that any evidence conflicted with [the CE's] opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of [the CE's] restrictions but not others." *Id.* The court, therefore, remanded "so that the ALJ [could] explain the evidentiary support for his RFC determination." *Id.* Later, the Tenth Circuit expressly applied *Haga* and its reasoning to the

opinions of nonexamining physicians in *Frantz v. Astrue*, 509 F.3d 1299, 1302–03 (10th Cir. 2007).

Defendant does not address *Haga* or *Frantz*. *See* [Doc. 21]. Instead, she cites to one unpublished case that, if read in a vacuum, could be misinterpreted as licensing an ALJ to ignore findings that are recorded in Section I. [Doc. 22] at 15 (citing *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) "The POMS provides that Section III of the MRFCA, not Section I, is for recording a medical consultant's formal mental RFC assessment, and that adjudicators are to use the Section III narrative as the RFC assessment.")).

For Defendant's argument to carry any weight, the Court would have to find that *Carver* implicitly overrules *Haga* and *Frantz*. To the extent Defendant invites the Court to interpret *Carver* as overruling *Haga* and *Frantz*, the Court declines. *Carver* does not overrule *Haga* and *Frantz*. It is unpublished, and besides, one panel of the circuit court cannot overrule another. *United States v. Brown*, 400 F.3d 1242, 1256 (10th Cir. 2005); *United States v. Foster*, 104 F.3d 1228, 1229 (10th Cir. 1997). "Absent an intervening Supreme Court or en banc decision justifying such action, [the Tenth Circuit Court of Appeals] lack[s] the power to overrule [its] own precedent." *Thompson v. Weyerhaeuser Co.*, 582 F.3d 1125, 1130 (10th Cir. 2009) (citing *United States v. Hernandez-Rodriguez*, 352 F.3d 1325, 1333 (10th Cir. 2003)).

Considering the POMS, the regulations, and *Haga* and *Frantz*, the Court cannot interpret the relevant case law as supporting Defendant's argument that the ALJ in this case was permitted to omit some of Dr. Gucker's limitations, without explaining the omission.

## B. The ALJ's RFC assessment fails to adequately account for Dr. Gucker's limitations.

If the moderate limitations assessed by Dr. Gucker had been accounted for in his own RFC opinion (i.e., "Section III"), then Defendant's argument might be more persuasive. An ALJ may rely exclusively on the Section III findings only with an essential caveat: the Section III findings must adequately account for the Section I findings. *See Nelson v. Colvin*, 655 F. App'x 626 (10th Cir. 2016) (referring to the doctor's Section I findings versus his Section III findings but ultimately deciding that the ALJ's RFC accounted for all of the Section I findings (as opposed to finding that the ALJ was free to disregard the Section I findings entirely)); *Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015) (finding that the POMS' distinction between the purposes of Section I and Section III "does not mean, of course, that the ALJ should turn a blind eye to any moderate limitations enumerated in Section I that are not adequately explained in Section III." (emphases omitted)); *Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015) ("Where a psychologist's Section III narrative does not contradict any Section I limitations and describes the effect each Section I limitation would have on the claimant's mental RFC, the ALJ may properly look to only the Section III narrative as the psychologist's opinion regarding mental RFC. The ALJ did so here . . . . And we do not see any contradiction between Sections I and III of Dr. Kendall's [report] or any failure to describe in Section III the effects of any Section I limitations on [the plaintiff]'s capacity for work." (citations omitted)); *Carver*, 600 F. App'x at 618–19 (acknowledging the POMS' distinction between Section I and Section III, but holding that an ALJ may not "turn a blind eye to moderate Section I limitations," and ultimately finding that the Section I limitations at issue were accounted for in the Section III findings); *Jaramillo v. Colvin*, 576 F. App'x 870, 874 (10th Cir. 2014) (acknowledging the POMS' distinction between Section I and Section III,

14

analyzing whether the ALJ's RFC (presented to the VE in a hypothetical question) "adequately account[ed]" for the Section I findings, and ultimately finding that the Section I limitations at issue were accounted for in the ALJ's RFC).

Plaintiff argues that the ALJ's RFC assessment—which essentially limited Plaintiff to unskilled work[5]—failed to account for or contradicted several of Dr. Gucker's assessed limitations:

- The ability to understand and remember very short and simple instructions;

- The ability to maintain attention and concentration for extended periods;

- The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;

- The ability to sustain an ordinary routine without special supervision;

- The ability to work in coordination with or in proximity to others without being distracted by them;

- The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;

- The ability to interact appropriately with the general public;

- The ability to ask simple questions or request assistance;

- The ability to accept instructions and respond appropriately to criticism from supervisors; and

- The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes;

---

[5] *Compare* Tr. 580–81 (ALJ's RFC assessment, including the following mental limitations: "[Plaintiff] is limited to performing simple, routine tasks. In the use of judgment, he is limited to simple work-related decisions. He can frequently interact appropriately with supervisors and coworkers. He can frequently engage in contact with the public. He can adapt to occasional changes in a routine work setting."), *with* POMS DI § 25020.10(A)(3) ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to: understand, carry out, and remember simple instructions; make judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions[;] respond appropriately to supervision, coworkers and work situations; and deal with changes in a routine worksetting.") (emphases and bullet points omitted).

15

[Doc. 17] at 16 (citing Tr. 103–04); [Doc. 25] at 4 (citing Tr. 103–04).

Defendant disagrees. She argues that the RFC assessment, coupled with the SVP-2 rating[6] of the jobs identified at step five, adequately accounted for Dr. Gucker's assessed limitations. [Doc. 22] at 16–17. For support, Defendant cites to two cases holding that a moderate limitation[7] in the ability to maintain concentration, persistence, or pace is adequately accounted for in an RFC limited to unskilled work and jobs at step five with an SVP rating of 1 or 2. *Id.* (citing *Berumen v. Colvin*, 640 F. App'x 763, 766 (10th Cir. Feb. 10, 2016); and citing *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015)). Defendant makes no argument specifically addressing any limitation other than a moderate limitation in the ability to maintain concentration, persistence, or pace. *See* [Doc. 22]. She cites to *Smith v. Colvin* for the proposition that "an [ALJ] can account for moderation limitations by limiting the claimant to particular kinds of work activity." [Doc. 22] at 16–17 (quoting *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016)). Her arguments and authorities, however, are not more specific than that. Finally, Defendant acknowledges that "[t]here may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations." *Vigil*, 805 F.3d at 1204; *see also Chapo*, 682 F.3d at 1290 n.3 (finding that a limitation to unskilled work accounted for "issues of skills transfer, not impairment of mental functions—which are not skills but, rather, general prerequisites for most work at any skill level").

---

[6] SVP stands for specific vocational preparation. It refers to the "time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Dictionary of Occupational Titles § 979.687-034. A job with SVP one requires a "[s]hort demonstration only," and SVP two requires "[a]nything beyond short demonstration up to and including 1 month." *Id.*

[7] These cases are distinct from the instant case in that the finding at issue in these cases was made by the ALJ at step three, whereas here, the findings at issue were made by a consultative examiner.

The arguments and authorities cited by Defendant may indicate that certain of Dr. Gucker's assessed limitations are accounted for in this case. For example, the moderate limitation in Plaintiff's ability to maintain attention and concentration for extended periods, Tr. 103, appears to be accounted for by the ALJ's limitation to unskilled work and SVP-2-level jobs at step five. *See Vigil*, 805 at 1204 ("[T]he ALJ accounted for Vigil's moderate concentration, persistence, and pace problems in his RFC assessment by limiting him to unskilled work."); *see also Smith*, 821 F.3d at 1268–68 (holding that, inter alia, a moderate limitation in the ability to maintain concentration, persistence, and pace was accounted in an RFC limitation to "simple, repetitive, and routine tasks").

Other limitations assessed by Dr. Gucker, however, are not accounted for in the ALJ's RFC assessment[8] or in the SVP-2-level jobs at step five, such as the moderate limitations in Plaintiff's ability to: (1) understand and remember very short and simple instructions, (2) maintain regular attendance and be punctual within customary tolerances, (3) sustain an ordinary routine without special supervision, and (4) ask simple questions or request assistance. These discrepancies are underscored by the fact that these mental abilities are considered "critical" for unskilled work. POMS § DI 25020.010(B)(3)(b), (e), (f), (j). The ALJ did not explain why he omitted these limitations from his RFC assessment, and without an explanation, remand is warranted.

**<u>Conclusion</u>**

Remand is warranted to revisit the opinion of Dr. Gucker because the ALJ failed either to incorporate Dr. Gucker's assessed limitations into the RFC or to explain the omission. Because

---

[8] "Mentally, he is limited to performing simple, routine tasks. In the use of judgment, he is limited to simple work-related decisions. He can frequently interact appropriately with supervisors and coworkers. He can frequently engage in contact with the public. He can adapt to occasional changes in a routine work setting." Tr. 580–81.

proper evaluation of Dr. Gucker's opinion may render moot Plaintiff's other alleged errors, the Court declines to pass on them at this time.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 17] is **GRANTED**. The Commissioner's final decision is reversed, and this case is remanded for further proceedings in accordance with this opinion. *See* § 405(g) (sentence four).

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR
United States Magistrate Judge
Presiding by Consent**